Scileppi, J.
These are two workmen’s compensation cases where payment is sought for disabilities allegedly resulting from occupational diseases (Workmen’s Compensation Law, § 3, subd. 2).
Matter of Goldberg v. 954 Marcy Corp. (276 N. Y. 313) establishes the definition of “ occupational disease” as “ one which results from the nature of the employment, and by nature is meant, not those conditions brought about by the failure of the employer to furnish a safe, place to work, but conditions to which all employees of a class are subject, and which produce the disease as a natural incident of a particular occupation, and attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of the hazard attending employment in general. Thus compensation is restricted to disease resulting from the ordinary and generally recognized risks incident to a particular employment, and usually from working therein over a somewhat extended period. Such disease is not the equivalent of a disease resulting from the general risks and hazards common to every individual regardless of the employment in which he is engaged.” (Pp. 318-319; see, also, Matter of Harman v. Republic Aviation Corp., 298 N. Y. 285, 288-289; Matter of Detenbeck v. General Motors Corp., 309 N. Y. 558, 560-561.)
The two cases presently under review require the application of this well-settled definition.

Matter of Snir

Claimant was a cashier in the J. W. Mays, Inc. department store. As stipulated, she worked at a cash register in a place in the store where she received a cold draft on her right side from the air conditioning; this caused a “ chronic strain or myositis ” involving “ the muscles of the right posterior neck and right shoulder girdle ”.
The Appellate Division, two Justices dissenting (26 A D 2d 752), affirmed a finding by the Workmen’s Compensation Board that this was an occupational disease. The majority below *378 relied heavily on Matter of Roettinger v. Great Atlantic & Pacific Tea Co. (17 A D 2d 76, affd. 13 N Y 2d 1102) wherein it was said that “ The regular exposure to temperature extremes was certainly a ‘ distinctive feature of the claimant’s job, common to all jobs of that sort ’ and the medical evidence made abundantly clear the ‘ recognizable link ’ between it and the disease (Matter of Harman v. Republic Aviation Corp., 298 N. Y. 285, 288) ” (17 A D 2d, p. 78).
We reverse. This case is governed by Matter of Goldberg v. 954 Marcy Corp. (supra). There, the claimant was a cashier working in a ticket booth outside a theatre. The booth was warmed by an electric heater controlled by the claimant. She claimed that discoloration of her limbs and numbing of her feet were caused by the, alternating heat and cold within the booth. We decided that there was no occupational disease. In doing so, we saidwe search the record to find if there is any evidence to show that the plaintiff was suffering from an occupational disease. Her occupation was that of handling cash and theatre tickets and it is obvious that this work in and of itself could not have caused the leg injury or disease. The ‘ disease ’ which befell her, therefore, was caused not by the nature of her employment, but by the failure of her employer to furnish her with a proper and safe place in which to work ” (p. 319).
The claimant here, as in Goldberg, was not subjected to an ailment necessarily a concomitant of the job of cashier. Cashiers as a class are not hired with the expectation that the work will be performed in front of a cold air ventilator. But in the particular situation in this case, the work was performed in such a hostile location. In Roettinger {supra) the claimant was a butcher who contracted emphysema because he was required to spend portions of his time in refrigerated air, as one might expect because of the nature of the work. In the present case,it cannot be said that the cold blasts from the air conditioning were “ common ” to all cashiers’ jobs; rather it was the place to work, not the work itself, that was responsible for claimant’s illness. Whatever other basis there may be for recovery, we find none under subdivision 2 of section 3 of the Workmen’s Compensation Law (see Labor Law, § 200; Matter of Greensmith v. Franklin Nat. Bank, 16 N Y 2d 973).

*379
Matter of Paider

The claimant in this ease was a truck driver who contracted tuberculosis from one Tom Smith, a trucker’s helper assigned to work with claimant. The Workmen’s Compensation Board found that the claimant’s tuberculosis was an occupational disease contracted through the use of a common instrument by Smith and claimant; i.e., the cab of the truck wherein both spent a considerable period of time. The Appellate Division reversed the decision and dismissed the claim rejecting the argument that the truck cab here was as much an “ instrument ” as the telephone headset in Matter of Mason v. Y.W.C.A. of City of N. Y. (271 App. Div. 1042, mot. for lv. to app. den. 297 N. Y. 1037); or the pipette in Matter of Hovancik v. General Aniline & Film Corp. (8 A D 2d 171).
We affirm. This case is governed by Goldberg (supra) and particularly by Matter of Harman v. Republic Aviation Corp. (298 N. Y. 285). In Harman the claimant, a foreman’s assistant, worked in close physical contact with one Humphrey, from whom claimant contracted tuberculosis. We dismissed the claim, saying (p. 290): “ The hazard that rendered claimant subject to the disease was Humphrey and not any condition that inhered in the nature of the employment itself. Any one, whether supervisor, laborer, factory hand or clerical worker, in any field of work, in any occupation or employment, whether factory, store or office, may contract tuberculosis, given a fellow worker already ill with that disease. No peculiarity of claimant’s job induced the disease or heightened the chance of infection; workers in other occupations, carried on under similar conditions, would have been just as likely as claimant to fall victim to the ailment if a Humphrey were about. As thus becomes evident, claimant’s disease resulted not from the ordinary and generally recognized hazards incident to a particular employment, but rather from the general risks common to every individual regardless of the employment in which he is engaged. (See Matter of Goldberg v. 954 Marcy Corp., supra.) ” (To the same effect, see Matter of Buckley v. Gallagher Bros. Sand & Gravel Corp., 300 N. Y. 447.)
In the present case, the hazard was Smith, not any peculiar feature of claimant’s employment as a truck driver. And, *380 therefore, claimant’s illness was not an “ occupational disease
In sum, we view an occupational disease as an ailment which is the result of a distinctive feature of the kind of work performed by claimant and others similarly employed, not an ailment caused by the peculiar place in which particular claimant happens to work, as in Snir, or caused by ordinary contact with a fellow employee as in Paider (see 1A Larson, Workmen’s Compensation Law, § 41.31, p. 622.113; § 41.50, p. 622.135-622.136; Barker, New York Workmen’s Compensation: Occupational Disease, 31 Albany L. Rev. 15, 19-20; Teresi, Medical Aspects of Occupational Disease in Relation to Workmen’s Compensation, 31 Albany L. Rev. 26, 28-29). The Legislature can extend the meaning of occupational disease to include all illness causally related to the worker’s employment. We cannot.
Accordingly, in Matter of Snir the order should be reversed and the claim dismissed, without costs; in Matter of Paider the order should be affirmed, without costs.