600 P.2d 283

**Herbert A. SCHOBER, Plaintiff-Appellant,**

v.

**MOUNTAIN BELL TELEPHONE, Defendant-Appellee.**

**No. 3585.**

Court of Appeals of New Mexico.

Oct. 31, 1978.

Anne Kass, Albuquerque, for plaintiff-appellant.

Ronald Segel, Sutin, Thayer & Browne, Albuquerque, for defendant-appellee.

OPINION

HENDLEY, Judge.

Plaintiff brought suit under the Workmen's Compensation Act, § 59–10–1 et seq., N.M.S.A.1953 (2d Repl.Vol. 9, pt. 1, 1974) as amended, claiming that his allergic reaction to cigarette smoke in the work environment provided by his employer was a compensable injury under the Act. Defendant's motion for summary judgment was granted on the basis that plaintiff's allergic reaction, which caused him to eventually collapse, was not an "accidental injury" as a matter of law as contemplated by the Act. We disagree.

*Webb v. New Mexico Pub. Co.,* 47 N.M. 279, 141 P.2d 333 (1943) is dispositive of this issue. There the employer provided Webb, a printer-operator, with a soap which he used to wash his hands several times a day over a period of about six months. Solely because of his allergic reaction to the soap Webb developed large painful eruptions on the backs of his hands which completely incapacitated him in his work. The court found this injury to be accidental.

In reaching its conclusion the court refused to define "accident" in its "restricted and technical sense" but instead opted for a "wider and practical" definition necessary "to give workable effect to the proper and just administration of the Compensation Law." The court found that there must be a time:

"... when it can be said with certainty that a compensable accidental injury has been inflicted; but the cause, and the coming into existence of the evidence characterizing it as a compensable one, need not be simultaneous events ...."

See also, *Stevenson v. Lee Moor Contracting Co.,* 45 N.M. 354, 115 P.2d 342 (1941).

Thus, under *Webb,* supra, the happenings may be gradual and may involve several different accidents which culminate in an accidental injury. In the present case the claim is that the constant exposure to cigarette smoke in the work environment triggered the allergies which in turn caused

plaintiff to collapse. We see no distinguishing features between the instant case and *Webb,* supra, insofar as accidental injury is discussed. The motion for summary judgment should have been denied.

Defendant urges us to analogize this case to the "silicosis" cases where workmen who developed this respiratory ailment over a prolonged period were denied workmen compensation benefits. See *Aranbula v. Banner Min. Co.,* 49 N.M. 253, 161 P.2d 867 (1945); *Simion v. Molybdenum Corporation,* 49 N.M. 265, 161 P.2d 875 (1945). Silicosis, however, is an occupational disease now covered by the Occupational Disease Disablement Law (§ 59–11–1, et seq. N.M.S.A. 1953 (2d Repl.Vol. 9, pt. 1, 1974) as amended; *Vincent v. United Nuclear-Homestake Partners,* 89 N.M. 704, 556 P.2d 1180 (Ct. App.1976). An allergic reaction to cigarette smoke is not an occupational disease. It is no different than the allergic reaction in *Webb,* supra. *Aranbula,* supra, and *Simion,* supra, are not on point.

This court has reviewed defendant's other arguments that the injury did not arise out of or in the course of employment as required by § 59–10–6, supra, and that plaintiff has already been compensated. These are questions of fact which are for the trier of fact to decide and not for an appellate court to resolve. *Goodman v. Brock,* 83 N.M. 789, 498 P.2d 676 (1972).

Reversed.

IT IS SO ORDERED.

LOPEZ, J., concurs.

HERNANDEZ, J., dissents.

HERNANDEZ, Judge (dissenting).

I respectfully dissent.

The defendant stated in its motion for summary judgment that it was based upon the pleadings, the deposition of the plaintiff, affidavits, etc. In its answer the defendant alleged several affirmative defenses, the second of which is pertinent:

"Plaintiff's alleged disability is not compensable under the Workmen's Compensation Act because it does not arise out of

and in the course of his employment for defendant."

The trial court in its order granting defendant's motion, gave its reason for granting it: "The court concludes as a matter of law, that plaintiff did not sustain an accidental injury within the meaning of the Workmen's Compensation Act . . . ."

I agree with the trial court's conclusion, that plaintiff's injury was not compensable. However, I disagree with the trial court's reasoning. In my opinion, plaintiff's injury did not arise out of his employment. Our Supreme Court in *Gilbert v. E. B. Law & Sons, Inc.,* 60 N.M. 101, 107, 287 P.2d 992 (1955) stated:

"Before an injury may be said to be compensable as 'arising out of employment,' the accident causing the injury must result from a risk reasonably incident to the employment; *a risk common to the public generally and not increased in any way by the circumstances of the employment is not covered by our act;* . . . ." [Emphasis added.]

In *Berry v. J. C. Penny Co.,* 74 N.M. 484, 394 P.2d 996 (1964) stated:

"There must not only have been a causal connection between the employment and the accident, but the accident must result from a risk incident to the work itself.

"When the employee, as in this case, solely because of a non-occupational, pre-existing physical condition, suffered a muscle spasm of the lower back, the question arises whether the muscle injury is one arising out of the employment.

"This court, along with the courts of most states, has interpreted 'arising out of employment' to require a showing that the injury was caused by a peculiar or increased risk to which claimant, as distinguished from the general public, was subjected by his employment. [Citations omitted.]

"Under the facts in this case, it is quite clear that claimant's injury arose out of risks or conditions personal to her and not out of a risk peculiar to the employment. Such injuries do not 'arise out of' the employment unless the employment con-

tributes to the risk or aggravates the injury. Those injuries within the category of risks personal to the claimant are universally held to be non-compensable." See 1 Larson's Workmen's Compensation Law, § 700.

The increased-risk doctrine might be summarized as follows: there must be a showing that the injury was caused by an increased risk to which the worker, as distinct from the general public, was subjected by his employment. The following Texas cases are good examples of the use of the doctrine.

*American General Ins. Co. v. Webster,* 118 S.W.2d 1082 (Tex.Civ.App.1938):

"It is, of course, the rule, as contended by appellant that to be compensable the heatstroke must originate in the business of the employer and at a time when the employee is engaged in the performance of duties that subject him to greater hazards from heatstroke than applied to the general public. The location of the place of work and the condition of the premises may constitute such extra hazard, in whole or in part. . . . The extra hazard may be supplied by the very nature of the work itself. It is a known fact, and was so testified by a medical witness in the instant case, that heavy exertions tend to generate a great deal of bodily heat. . . . In the case before us the very work which the deceased was doing for his employer exposed him to greater hazard from heatstroke than the general public was exposed to for the simple reason that the general public were not pushing wheelbarrow loads of sand in the hot sun on that day."

*Weicher v. Insurance Company of North America,* 434 S.W.2d 104 (S.Ct.Tex.1968): The petitioner was a saleslady in a department store who was seeking compensation due to heat exhaustion.

"It would appear, then, that Petitioner in order to recover would be required to show that the heat and humidity inside the building where Petitioner worked had been intensified by some circumstance of the condition of the premises. It takes

**340**

evidence of this nature to prove that the heat and humidity inside the building is more hazardous than the natural heat and humidity outside to which the general public was subjected."

Any member of the public who entered those buildings would be exposed to the same air. The underlying reason for his disability was personal not work connected. It was purely coincidental that this sensitivity happened at work, it could have happened most any place.

In my opinion, the trial court reached the right conclusion for the wrong reason.