731 P.2d 968

**Van CHADWICK, Plaintiff-Appellant,**

v.

**PUBLIC SERVICE COMPANY OF NEW MEXICO, Employer, a self-insurer, Defendant-Appellee.**

No. 9193.

Court of Appeals of New Mexico.

Dec. 2, 1986.

Certiorari Denied Jan. 26, 1987.

Jay L. Faurot, P.A., Faurot & Titus, P.A., Farmington, Winston Roberts-Hohl, Santa Fe, for plaintiff-appellant.

Barbara Albin, Keleher & McLeod, P.A., Albuquerque, for defendant-appellee.

## OPINION

MINZNER, Judge.

Plaintiff appeals denial of his claim for benefits under the New Mexico Occupational Disease Disablement Law. We affirm.

While employed by Public Service Company of New Mexico (PNM) as a journeyman working mechanical foreman at the San Juan Generating Station, plaintiff developed a rash, diagnosed as contact dermatitis. After he stopped working at the station, the rash lessened and eventually disappeared. Plaintiff sought benefits for total disablement due to an occupational disease as well as benefits for total disability under the Workmen's Compensation Act.

The trial court found that plaintiff's rash was caused by an allergy, but that no one had been able to identify the chemical or substance which caused the allergic reaction. The trial court also found, however, that the allergy was, to a reasonable medical probability, caused by an airborne substance or substances in the atmosphere at the station. The trial court further found that, while plaintiff's condition prevents him from working at that location, he is wholly able to perform the same work elsewhere.

Based on these findings, the trial court concluded that, while plaintiff's allergy is a disease, it is not a compensable occupational disease. The trial court reasoned that the allergy is neither a material and direct result of the particular occupation or work plaintiff performed nor incidental to it; rather, the allergy related only to the place of employment. The trial court dismissed the complaint, awarding costs to PNM. On appeal, plaintiff argues that the trial judge used an incorrect criterion in determining whether his disease is an occupational dis-

ease under the Act, and that there is no statutory authority for PNM recovering its costs.

█ In the statement of proceedings in his brief, plaintiff states he is also challenging the trial court's findings that he is able to perform the same occupation at another location and that he is not entitled to attorney's fees. Because these issues were not mentioned elsewhere in the brief, we have treated them as abandoned, *see State v. Sandoval*, 88 N.M. 267, 539 P.2d 1029 (Ct.App.1975), and we accept the findings as facts on appeal. *See City of Farmington v. Sandoval*, 90 N.M. 246, 561 P.2d 945 (Ct.App.1977).

## WHETHER PLAINTIFF'S ALLERGY IS AN OCCUPATIONAL DISEASE.

█ An allergy may be an occupational disease. *See Holman v. Oriental Refinery*, 75 N.M. 52, 400 P.2d 471 (1965) (filling station attendant's allergy to gasoline an occupational disease). Whether it is an occupational disease depends upon whether there is a recognizable link between the disease and some distinctive feature of the claimant's job. *Martinez v. University of California*, 93 N.M. 455, 601 P.2d 425 (1979). An allergic reaction may be compensable under the Workmen's Compensation Act rather than as an occupational disease. *See Schober v. Mountain Bell Telephone*, 93 N.M. 337, 600 P.2d 283 (Ct. App.1978).

█ Plaintiff cites *Marable v. Singer Business Machines*, 92 N.M. 261, 586 P.2d 1090 (Ct.App.1978), to support his argument that, because the allergy was peculiar to the working conditions at the generating station, the trial court should have found that it was an occupational disease. The discussion and rationale underlying the opinion in *Marable* do not constitute binding precedent within the meaning of the state constitution, *see* N.M. Const. art. VI, § 28, because two judges concurred only in the result. *Casias v. Zia Co.*, 94 N.M. 723, 616 P.2d 436 (Ct.App.1980). Nevertheless, we conclude that the opinion contains language that is consistent with NMSA 1978,

Section 52-3-33, and a definition that we should adopt. Under that definition, the trial court's conclusions must be affirmed.

█ The *Marable* opinion followed the reasoning of various New York courts in stating that the disease must result from the occupation, not the workplace.

> Thus an occupational disease is one which results from the nature of the employment, and by nature is meant, not those conditions brought about by the failure of the employer to furnish a safe place to work, but conditions to which all employees of a class are subject, and which produce the disease as a natural incident of a particular occupation, and attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of the hazard attending employment in general.

*Goldberg v. 954 Marcy Corp.*, 276 N.Y. 313, 318–19, 12 N.E.2d 311, 313 (1938). *See also Harman v. Republic Aviation Corp.*, 298 N.Y. 285, 288, 82 N.E.2d 785, 786 (1948) ("[a]n ailment does not become an occupational disease simply because it is contracted on the employer's premises"). Another New York court has said, "we view an occupational disease as an ailment which is the result of a distinctive feature of the kind of work performed by claimant and others similarly employed, not an ailment caused by the peculiar place in which [the] particular claimant happens to work * * *." *Paider v. Park East Movers*, 19 N.Y.2d 373, 380, 280 N.Y.S.2d 140, 144, 227 N.E.2d 40, 43 (1967). We agree.

█ Adopting the argument that conditions of a particular workplace, unrelated to the claimant's occupation, may give rise to a compensable occupational disease would, in effect, transform the law's protection into health insurance. *See Goldberg v. 954 Marcy Corp.* While the law should be construed liberally in favor of the claimant, its coverage should not be extended beyond the scope of the statute. *See Aranbula v. Banner Min. Co.*, 49 N.M. 253, 161 P.2d 867 (1945).

The trial court found plaintiff's allergy was caused by airborne substances at the generating station. Such a disease is not a distinctive feature of the work of a mechanic, and the risk of such a disease is not a hazard common to a mechanic's job. *Cf. Holman v. Oriental Refinery; Schober v. Mountain Bell Telephone*, 93 N.M. at 338, 600 P.2d at 284 ("[a]n allergic reaction to cigarette smoke is not an occupational disease").

Plaintiff also cites *Schober v. Mountain Bell Telephone*, 96 N.M. 376, 630 P.2d 1231 (Ct.App.1980), in support of his argument that conditions of the workplace may cause an occupational disease. In that case, the claimant collapsed at work due to an allergy to cigarette smoke. This court held that his disability "arose out of his employment" for purposes of NMSA 1978, Section 52–1–9(B). Because the only treatment for his condition was avoidance of tobacco smoke, and since all of the jobs for which claimant was suited by training and background could only be performed in an office, claimant was entitled to worker's compensation benefits for partial disability.

Plaintiff's appellate claim must be distinguished. The only issue on appeal is his entitlement to recovery for an occupational disease.

The finding that plaintiff is able to work as a mechanic at other locations in itself precludes his eligibility under the law. He is not unable to work in the pursuit in which he was engaged. *See Holman v. Oriental Refinery; Vincent v. United Nuclear-Homestake Partners*, 89 N.M. 704, 556 P.2d 1180 (Ct.App.1976). *See also* NMSA 1978, § 52–3–4(A), which was amended while this appeal was pending but the amendment is not effective until July 1, 1987 (*see* 1986 N.M.Laws, ch. 22, § 105).

We hold that plaintiff's allergy is not an occupational disease within the meaning of the Act. *Cf. Bird v. Pennfield Agricultural School District No. 1*, 348 Mich. 663, 83 N.W.2d 595 (1957) (schoolteacher's allergic symptoms from paint used to paint classroom held a compensable occupational disease, where history was of recurrent exposure and recurrent disabling symptoms).

## RECOVERY OF COSTS BY PNM.

The trial court awarded PNM costs. Defendant submitted a cost bill that totalled $603.50; the bill listed two expert witness fees for depositions taken from medical experts. Both depositions were used in lieu of trial testimony.

Plaintiff contends that, because an unsuccessful claimant is not responsible for the cost of depositions, the trial court lacked authority to award these items as costs. *See* NMSA 1978, § 52–3–23 (repealed effective May 21, 1986, 1986 N.M. Laws, ch. 22, § 102). Defendant observes that the medical experts in this case were deposed under subpoena, and the trial court may assess against the plaintiff, as costs, fees of expert witnesses who testify for the defense under subpoena. *See* NMSA 1978, Section 52–3–24(B), repealed effective May 21, 1986, 1986 N.M.Laws, ch. 22, § 102. The proposition that a conflict exists between the statute governing depositions and the statute governing costs raises a question of first impression.

We must deal at the outset with defendant's contention that no error was preserved. Plaintiff neither moved for review of the costs assessed, *see* NMSA 1978, Civ.P.Rule 54(e) (Cum.Supp.1985), nor made an objection of record. The record indicates that the trial court awarded costs before, but the clerk assessed costs after, the notice of appeal was filed. Under these circumstances, it is not clear that plaintiff had a sufficient opportunity to raise the issue at trial. For this reason, *see* NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.Rule 308 (Repl.Pamp.1983), and because the statute on which plaintiff relies, *see* Section 52–3–23, contains the phrase "in no event," we reach the merits of this issue.

Costs are a creature of statutes and may not be imposed in the absence of clear legislative authorization. *Reck v. Robert E. McKee General Contractors,*

*Inc.*, 59 N.M. 492, 287 P.2d 61 (1955). In the absence of a statute shifting the incidence of litigation costs, parties must bear the fees and expenses they incur. *See* 3 A. Larson, *Workmen's Compensation Law,* § 83.20 (1983). Some states have lightened this burden for claimants. *See id.* For workers who win, NMSA 1978, Sections 52–1–35(B) (repealed effective May 21, 1986, 1986 N.M.Laws, chapter 22, Section 102) and 52–3–24(B) provide for costs to be awarded, but only under the terms of the statute. Where these statutes apply, the matter of assessing costs lies within the discretion of the trial court. *Archuleta v. Safeway Stores, Inc.*, 104 N.M. 769, 727 P.2d 77 (Ct.App.1986).

For losing claimants, the statutes governing depositions protect against the expense of discovery ordered by the court. NMSA 1978, §§ 52–1–34 (repealed effective May 21, 1986, 1986 N.M.Laws, ch. 22, § 102); 52–3–23. Where the deposition statute applies, there is no discretion in the payment of costs. *Trujillo v. Beaty Electric Co.*, 91 N.M. 533, 577 P.2d 431 (Ct.App. 1978). However, we recently held that a general discovery order, such as was entered in this case, is not sufficient to protect claimants against the expense of discovery. *Soliz v. Bright Star Enterprises,* 104 N.M. 202, 718 P.2d 1350 (Ct.App.1986).

The two witnesses listed in the cost bill were Dr. Willis and Dr. Johnson. With respect to Dr. Johnson, he was deposed by plaintiff under subpoena. The record indicates plaintiff introduced his deposition at trial. Nevertheless, the bill of costs submitted by defendant indicates defendant paid Dr. Johnson's expert witness fee. We need not decide whether this fee is a cost or expense within the meaning of Section 52–3–23. In the absence of a specific order as to Dr. Johnson, Section 52–3–23 provides no authority for shifting his fee as an expert to defendant. *Soliz v. Bright Star Enterprises.*

Dr. Willis was deposed by defendant under subpoena. The notice expressly stated that the deposition would be used in lieu of live testimony. At trial, Dr. Willis's deposition was introduced by defendant. The cost bill lists his fee as an expert at the deposition.

Witness fees for a witness testifying under subpoena may be taxed as costs under Section 52–3–24(B). *See Sedillo v. Levi Strauss Corp.*, 98 N.M. 52, 644 P.2d 1041 (Ct.App.1982). In *Goolsby v. Pucci Distributing Co.*, 80 N.M. 59, 451 P.2d 308 (Ct.App.1969), this court noted that the trial court may assess against the plaintiff, as costs, the fees of expert witnesses who testify for the defense under subpoena. In that case, the court relied on the predecessor of NMSA 1978, Section 52–1–35(B) (repealed effective May 21, 1986; *see* 1986 N.M.Laws, ch. 22, § 102), which is essentially the same as Section 52–3–24(B), the applicable statute in this occupational disease case. *See Sedillo v. Levi Strauss Corp.* Assuming but not deciding that Dr. Willis's fee is a cost or expense within the meaning of Section 52–3–23, that section does not preclude assessment of this cost against plaintiff, because the deposition was not specifically ordered by the court. *Soliz v. Bright Star Enterprises.*

We hold that under Section 52–3–24(B), the expert witness fees for Dr. Willis and Dr. Johnson were properly assessed. We therefore affirm the trial court's award of costs as within its discretion.

**CONCLUSION.**

The trial court correctly ruled that plaintiff's allergy was not compensable under the New Mexico Occupational Disablement Law. We also affirm the award of costs. Under these circumstances, the judgment is affirmed in its entirety.

IT IS SO ORDERED.

DONNELLY and ALARID, JJ., concur.