871 P.2d 1373

**TWIN MOUNTAIN ROCK, Kiewit Construction Company, and Aetna Casualty and Surety Company, Claimants–Appellees,**

v.

**Modesto RAMIREZ, Respondent–Appellant.**

**No. 14816.**

Court of Appeals of New Mexico.

Feb. 2, 1994.

Certiorari Denied March 31, 1994.

Christopher W. Nickels, Richard F. Rowley, III, Pelton & O'Brien, P.A., Albuquerque, for claimants-appellees.

Rod Dunn, Albuquerque, for respondent-appellant.

## OPINION

HARTZ, Judge.

█ Modesto Ramirez (Claimant) appeals from an award under the Workers' Compensation Act, claiming that he was entitled to a higher level of benefits for scheduled injuries. The Workers' Compensation Judge found that Claimant had suffered a twenty-percent impairment of his left leg at the knee and a forty-five-percent impairment of his right large toe arising from work-related injuries on November 7, 1989, and April 17, 1990. He also found that Claimant was disabled by the injuries. The Judge awarded scheduled-injury benefits under NMSA 1978, Section 52–1–43(B) (Repl.Pamp.1987). Claimant makes an interesting argument that benefits should have been awarded under Section 52–1–43(A). We are not persuaded and therefore affirm the award.

The pertinent provisions of Section 52–1–43 state as follows:

A. For disability resulting from an accidental injury to specific body members including the loss or loss of use thereof, the worker shall receive the weekly maximum and minimum compensation for disability as provided in Section 52–1–41 NMSA 1978, for the following periods:

. . . .

(3) one arm between wrist at elbow, dextrous member . . . . . . 150 weeks

. . . .

(35) one great toe at the second joint . . . . . . 12 weeks

. . . .

B. For a partial loss of use of one of the body members or physical functions listed in Subsection A of this section, the worker shall receive compensation computed on the basis of the degree of such partial loss of use, payable for the number of weeks applicable to total loss or loss of use of that body member or physical function.

Claimant contends that Section 52–1–43(A) applies whenever a loss or loss of use of a body member resulting from an accidental injury causes disability to the worker. He reads Section 52–1–43(B) as applying only when the partial loss of use of a body member has not resulted in any disability. He bases his construction of the section on the appearance of the word "disability" in subsection A and not in subsection B, which speaks only of "loss of use."

█ We agree with Claimant that New Mexico appellate decisions construing the

Workers' Compensation Act and its predecessors have repeatedly distinguished between "disability" and "impairment." *See, e.g., Anaya v. New Mexico Steel Erectors,* 94 N.M. 370, 372, 610 P.2d 1199, 1201 (1980). An impairment is an infirmity or defect that limits the physical functioning of the worker's body. The total or partial loss of use of a member or physical function is an impairment. A disability, in contrast, is a limitation on the worker's capacity to perform work. Disability and infirmity are related concepts, but they are not congruent. What might be a minor physical infirmity could cause substantial disability, as when a concert pianist suffers a finger injury. The opposite situation can also occur. A significant impairment may not cause a disability if the impairment does not affect the worker's ability to perform his or her occupation. *See Pacheco v. Springer Corp.,* 83 N.M. 622, 495 P.2d 800 (Ct.App.1972).

Nevertheless, we believe that Claimant's proposed construction of Section 52–1–43 distorts the meaning of the statute. The most sensible construction of Section 52–1–43 is that subsection A sets forth the benefits for total loss or total loss of use of a member or function and subsection B sets forth the benefits for partial loss of use of a member or function.

What most gives us pause about Claimant's argument is that it fails to explain why the legislature would want to enact a law that provides what Claimant says that it does. Under Claimant's construction of Section 52–1–43 a worker who suffered a one-percent impairment of a member would receive the same benefits as a worker who lost the member, so long as the partially impaired worker suffered at least some disability—perhaps as little as a one-percent disability. That result would be contrary to the consistent philosophy of New Mexico workers' compensation acts that persons who suffer a certain percentage of partial disability (or partial impairment) should receive benefits equal to that percentage of what one would receive for total disability (or total impairment). Thus, a worker who suffers a partial disabili-

ty ordinarily receives benefits equal to "a percentage of the benefit payable for total disability," NMSA 1978, § 52–1–42 (Repl. Pamp.1987), and, as Claimant recognizes, a worker who suffers a partial impairment of a member ordinarily receives "compensation computed on the basis of the degree of such partial loss of use." Section 52–1–43(B). We can conceive of no reason why the legislature would depart from this philosophy to provide the same benefits under Section 52–1–43(A) regardless of the extent of disability or impairment.

Moreover, if Claimant were correct in his interpretation of Section 52–1–43(A), we question whether the legislature would have bothered to enact Section 52–1–43(B), because in the great majority of cases the partial loss of use of a member would cause a partial disability. If the statute were construed in the manner suggested by Claimant, there would be few occasions in which a worker would be relegated to recovery under Section 52–1–43(B).

Although the use of the word "disability" in Section 52–1–43(A) is troubling, it can be explained. The language is parallel to that used at the beginning of NMSA 1978, Section 52–1–41 (Repl.Pamp.1987) ("For total disability . . . .") and Section 52–1–42 ("For partial disability . . . ."). Continuing that phrasing in Section 52–1–43 would seem natural because of the understandable assumption that anyone who suffered the loss or total loss of use of a member would generally be disabled to some extent.

Our interpretation is buttressed by language in Section 52–1–43(B). Subsection B provides that the benefit payable for partial loss of use is computed on the basis of the degree of partial loss and is "payable for the number of weeks applicable to total loss or loss of use of that body member or physical function." The "number of weeks" referred to is the number of weeks set forth in the various paragraphs in subsection A. We find it significant that subsection B refers to those numbers as the "number of weeks *applicable to total loss or loss of use,*" thereby

indicating that the provisions in subsection A relate solely to *total* loss or loss of use of a body member or physical function.

Persuasive support for our construction of Section 52–1–43 also appears in prior New Mexico appellate opinions. Although no opinion has directly addressed the issue raised by Claimant, the resolution of other issues has led the courts to determine the meaning of the language in question on this appeal. Thus, in *Hise Construction v. Candelaria*, 98 N.M. 759, 760, 652 P.2d 1210, 1211 (1982), the Supreme Court wrote:

> The scheduled injury section does not take into consideration the occupation of the worker and how the loss of the specific member of the body may affect his or her ability to perform the duties of his or her job. The schedule, for example, awards the same benefit to a piano player as to a night watchman for the loss of a finger, hand or arm.

To state that benefits for scheduled injuries are independent of the effect on the worker's "ability to perform the duties of his or her job" is another way of saying that disability is not required for recovery pursuant to Section 52–1–43.

A blunter statement of the same proposition appears in the insightful opinion for the Court by Judge Wood in *Witcher v. Capitan Drilling Co.*, 84 N.M. 369, 503 P.2d 652 (Ct. App.1972), *cert. quashed*, 85 N.M. 380, 512 P.2d 953 (1973). The opinion construed NMSA 1953, Section 59–10–18.4 (Cum.Supp. 1959), which was the predecessor to Section 52–1–43(A) and began with the identical language: "For disability resulting from an accidental injury to specific body members including the loss or loss of use thereof...." The *Witcher* Court was troubled that if the word "disability" in subsection A meant the same thing as "disability" in the sections on total and partial disability, then a person who lost a member but suffered no disability would receive no compensation; it concluded that "'disability' in Subparagraph A means 'physical impairment.'" *Id.* at 371, 503 P.2d at 654; *see Pacheco*, 83 N.M. at 623, 495 P.2d

at 801 ("Compensation, apart from the scheduled injury section, ... is based on disability to work[.]").

No later opinion has called into question that statement in *Witcher*. Once the courts have authoritatively construed statutory language, the legislature is entitled to rely on that construction. In particular, if the legislature uses the same language in the same context in a later enactment, we should presume that the legislature intended the language to be construed as it had been in the past. *See Matthews v. State*, 113 N.M. 291, 295, 825 P.2d 224, 228 (Ct.App.1991) ("In amending the statute, the legislature is presumed to have been informed as to the prior judicial interpretation or construction applied to such act."). For the courts to change their construction of the language after it is reenacted is almost to defraud the legislature. Because the pertinent language in Section 52–1–43 has been reenacted several times, including in 1987 when it replaced language of the 1986 Interim Act that was rather different from any predecessor scheduled-injury section, *see* NMSA 1978, § 52–1–43 (Cum.Supp.1986), we should defer to *Witcher*'s construction of the language even if we harbored some doubt concerning the correctness of that decision. Deference is easy for us in this case because we believe *Witcher* to be correct.

In sum, we construe Section 52–1–43 as providing a simplified method for determining the benefits owed a worker when the sole injury to the worker is the loss or impairment (total or partial) of certain body members or functions. The benefits are due even absent proof of disability caused by the loss or impairment. Subsection A states the benefits for loss or total impairment. Subsection B states how to compute benefits when the impairment is only partial.

We therefore reject Claimant's contention that he is entitled to benefits under Section 52–1–43(A) and affirm the award below.

**IT IS SO ORDERED.**

MINZNER, C.J., and BIVINS, J., concur.